STATE OF NORTH CAROLINA v. ALEXANDER McLAUGHLIN

No. 353A87

(Filed 2 December 1987)

1. **Burglary and Unlawful Breakings § 5.7— breaking and entering of motor vehicle—no evidence of items of value inside motor vehicle—evidence insufficient**

   The trial court should not have submitted breaking and entering a motor vehicle to the jury where there was no evidence that the victim's vehicle contained items of value. N.C.G.S. § 14-56 requires as an element of the offense that the vehicle contain "goods, wares, freight, or other thing of value."

2. **Larceny § 7.7— larceny of automobile—evidence sufficient**

   The trial court properly denied defendant's motion to dismiss the charge of larceny of an automobile where the victim had left her car keys on the edge of her vanity on the night of the offenses; the keys were missing the next morning; the victim noticed that her car was also missing when she left her house; she had not consented to anyone taking her keys or the car; a witness told officers that defendant and another man arrived at his house at 4:00 a.m. driving two cars, one of which was the same color as the victim's; defendant told the witness that they had taken so much stuff that they had had to take the victim's car, too; and the victim testified that she had received $1,800 as the trade-in value of the car eleven months after the offenses and that she thought it was worth $1,800 at the time it was taken.

3. **Larceny § 10— larceny of automobile consolidated with breaking and entering of motor vehicle—breaking and entering reversed—larceny remanded**

   When a larceny of an automobile count was consolidated for sentencing with a count for breaking and entering a motor vehicle and the breaking and entering conviction was reversed, the larceny count was remanded for resentencing.

4. **Criminal Law § 150.1; Constitutional Law § 34— conviction for larceny and common law robbery—double jeopardy issue waived by failure to object**

   A defendant who was convicted of both larceny and common law robbery waived his right to raise double jeopardy on appeal by failing to move in the trial court to arrest judgment on either conviction or to otherwise object to the convictions or sentences on double jeopardy grounds.

5. **Criminal Law § 117.4— instructions on testimony of accomplices—no prejudicial error**

   There was no prejudicial error in a prosecution arising from a burglary, rape, and kidnapping where the court did not instruct the jury prior to the testimony of three State's witnesses that the witnesses were testifying under grants of immunity. There was no evidence of a formal grant of immunity and order to testify, the court instructed the jury at the close of all the evidence to consider the witnesses' evidence in light of their possible bias, and their accomplice roles were abundantly clear from the evidence. N.C.G.S. § 15A-1052(c).

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) (1986) from judgments of life imprisonment entered by *Read, J.,* on 16 February 1987 in Superior Court, CUMBERLAND County. On 6 July 1987 we allowed defendant's motion to bypass the Court of Appeals in appeals from additional convictions for which the trial court entered judgments of imprisonment for terms of years. Heard in the Supreme Court 11 November 1987.

*Lacy H. Thornburg, Attorney General, by Francis W. Crawley, Assistant Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

WHICHARD, Justice.

Defendant was charged in a single indictment with first degree burglary, felonious larceny, first degree rape (four counts), first degree kidnapping, breaking and entering a motor vehicle, larceny of an automobile, and common law robbery. At his first trial, the jury returned verdicts of guilty on all charges. We awarded a new trial for error in the admission of an accomplice's confession. *State v. McLaughlin,* 316 N.C. 175, 340 S.E. 2d 102 (1986). Upon retrial, the jury again returned verdicts of guilty on all charges.

Pursuant to our decision in *State v. Freeland,* 316 N.C. 13, 340 S.E. 2d 35 (1986), the trial court arrested judgment on the first degree kidnapping conviction and entered sentence as upon a conviction of second degree kidnapping. The court sentenced as follows: first degree burglary and felony larceny (consolidated), life imprisonment; first degree rape (two counts consolidated), life imprisonment, consecutive to the life sentence for first degree burglary and felony larceny; first degree rape (two remaining counts consolidated), life imprisonment, consecutive to the life sentence for the previous two counts of first degree rape; second degree kidnapping, thirty years imprisonment, consecutive to the life sentence for the last two counts of first degree rape; breaking or entering a motor vehicle and larceny (consolidated), ten years imprisonment, consecutive to the thirty year sentence for second degree kidnapping; and common law robbery, ten years imprisonment, consecutive to the ten year sentence for breaking or entering a motor vehicle and larceny.

The State's evidence, in pertinent part, showed the following:

On 20 December 1983 the victim, a sixty-nine year old widow who lived alone, went to bed between 11:00 and 11:30 p.m. Sometime during the night, she was awakened by something hitting her mouth. She saw four eyes and realized that there were two other people in the room. They wore what appeared to be ski masks over their heads and gloves on their hands.

The two men each had intercourse with the victim twice against her will. On each occasion, one of the men held the victim down while the other performed the sexual act. The men tied the victim to her bed. While in the bedroom, the men forced her and her late husband's wedding rings from the victim's fingers. A diamond ring was later found on the floor, but the victim did not recover the wedding rings.

The men then ransacked the victim's house. When the victim subsequently went through the house, some money and several items of her personal property were missing. The victim's insurance company valued the missing property at $1,400.00, and the victim believed it to be worth at least that amount. The victim's car keys were among the items missing.

The victim was afraid to leave the house until daylight. When she finally left to go next door, she noticed that her car was gone. She had seen the car the last time she had come into the house.

The victim did not identify the perpetrators at trial.

Shortly before 21 December 1983, Larry McLaughlin, defendant's second cousin, had talked with defendant in a poolroom. Defendant asked Larry if he could "get rid of" some stolen goods for him. Larry was physically disabled and unable to work at the time. He saw this as "an easy way of . . . making some money" and told defendant he could.

Defendant and Quincy Corbett then came to Larry's house at about 4:00 a.m. on 21 December 1983. Both men wore gloves and rolled-up ski masks. There were two cars outside. Larry recognized one as defendant's father's car but did not recognize the other. Defendant and Corbett went out to the cars and "brought back the goods." They told Larry that they got the goods from

Gray's Creek, the community where the victim lived, "from a lady named Mrs. [victim's last name] place." Larry's description of the goods he saw on that occasion generally matched the victim's description of the items taken from her home.

Later that day, Larry sold the items to Robert McRae for $300.00. He gave defendant $200.00 of that amount. McRae sold some of the items to Joe McGeachy, the husband of McRae's niece.

Larry McLaughlin's wife's testimony generally corroborated his testimony. Defendant testified and offered a defense in the nature of an alibi.

[1] Defendant first contends that the trial court erred in denying his motion to dismiss the charge of breaking and entering a motor vehicle. We are constrained to agree.

The indictment charged that defendant "unlawfully, willfully and feloniously did break and enter a [described] motor vehicle . . . which contained the goods and chattels of [the victim], with the intent to commit larceny therein, in violation of [N.C.G.S. §] 14-56." N.C.G.S. § 14-56 (1983) provides, in pertinent part: "If any person with intent to commit any felony or larceny therein, breaks or enters any . . . motor vehicle . . . *containing any goods, wares, freight, or other thing of value* . . . that person is guilty of a Class I felony." (Emphasis supplied.) The statute requires, as an element of the offense, that the vehicle broken or entered must contain "goods, wares, freight, or other thing of value." Our Court of Appeals has held that even items of trivial value satisfy this element of the offense. *See State v. Goodman*, 71 N.C. App. 343, 349-50, 322 S.E. 2d 408, 413 (1984) (registration card, hubcap key); *State v. Quick*, 20 N.C. App. 589, 590-91, 202 S.E. 2d 299, 300-01 (1974) (papers, cigarettes, shoe bag). The record here, however, is devoid even of evidence that the victim's vehicle contained items of trivial value that belonged to the victim or to anyone else. The State concedes in its brief that "[i]n the case at bar there was no evidence of items of personal property being present in the car on the date of the offense . . . ."

"Prior to submitting the issue of a defendant's guilt to the jury, the trial court must be satisfied that substantial evidence has been introduced tending to prove each essential element of

the offense charged and that the defendant was the perpetrator." *State v. Covington*, 315 N.C. 352, 361, 338 S.E. 2d 310, 316 (1986). Because there was no evidence here of an essential element of the offense established by N.C.G.S. § 14-56, the trial court should not have submitted the issue of defendant's guilt of this offense to the jury. Accordingly, defendant's conviction on the charge of breaking and entering a motor vehicle is reversed.

[2]  Defendant contends that the trial court erred in denying his motion to dismiss the charge of larceny of the victim's automobile for insufficiency of the evidence. We disagree.

> On a motion to dismiss on the ground of insufficiency of the evidence, the question for the court is whether there is substantial evidence of each element of the crime charged and of defendant's perpetration of such crime. (Citations omitted.) In evaluating the motion the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. (Citation omitted.)

*State v. Williams*, 319 N.C. 73, 79, 352 S.E. 2d 428, 432 (1987) (quoting *State v. Young*, 312 N.C. 669, 680, 325 S.E. 2d 181, 188 (1985) ).

> Larceny is a common law crime which consists of

> the . . . taking and carrying away from any place at any time of the personal property of another, without the consent of the owner, with the . . . intent to deprive the owner of his property permanently and to convert it to the use of the taker or to some other person than the owner.

*State v. Booker*, 250 N.C. 272, 273, 108 S.E. 2d 426, 427 (1959). *See also State v. Revelle*, 301 N.C. 153, 163, 270 S.E. 2d 476, 482 (1980). If the value of the property taken exceeds $400.00, the crime is a Class H felony. N.C.G.S. § 14-72(a) (1986).

Applying these principles to the evidence here, we find the following:

The State's evidence showed that on  the night of the offenses the victim had left her car keys on the edge of her vanity. The next morning the keys were missing. When the victim left her house, she noticed that her automobile — a 1976 Buick Le-

Sabre, brown with a light vinyl top—was also missing. She had not consented for anyone to take the keys or the car.

Larry McLaughlin told investigating officers that when defendant and Quincy Corbett arrived at his house at approximately 4:00 a.m. on 21 December 1983, they were driving two cars. One was an orange-colored car that belonged to defendant's father, Larry's uncle. The other was a tan-colored car. Defendant told Larry "they took so much· stuff that they had to take [the victim's] car too."

The victim testified that she received $1,800.00 as the trade-in value of the car some eleven months after the offense. She valued the car at the time it was taken at in excess of $1,800.00.

Considered in the light most favorable to the State, as required, the foregoing constituted substantial evidence of each element of felonious larceny of the victim's automobile and of defendant as one of the perpetrators. The court thus properly denied the motion to dismiss.

[3] We note, however, that the larceny of an automobile count was consolidated for sentencing with the count for breaking and entering a motor vehicle. Since we have reversed the conviction for breaking and entering a motor vehicle, the larceny of an automobile count must be remanded for resentencing.

[4] Defendant contends that larceny is a lesser included offense of common law robbery and that the trial court subjected him to double jeopardy by allowing his convictions for both larceny and common law robbery to stand. He argues that the felonious taking of all the personal property after the victim was tied to her bed resulted in a single common law robbery. By failing to move in the trial court to arrest judgment on either conviction, or otherwise to object to the convictions or sentences on double jeopardy grounds, defendant has waived his right to raise this issue on appeal. *State v. Dudley*, 319 N.C. 656, 659, 356 S.E. 2d 361, 363-64 (1987); *State v. Freeman*, 319 N.C. 609, 618, 356 S.E. 2d 765, 769-70 (1987).

[5] Defendant finally contends that the trial court erred in failing to instruct pursuant to N.C.G.S. § 15A-1052(c)—prior to testimony by the State's witnesses Larry McLaughlin, Robert McRae, and Joe McGeachy—that the witnesses were testifying under

grants of immunity. He admits in his brief, however, that "there was no evidence of a formal grant of immunity and order to testify." "Unless a witness has been formally granted immunity there is no statutory requirement for any such cautionary instruction prior to testimony." *State v. Murray*, 310 N.C. 541, 546, 313 S.E. 2d 523, 528 (1984), citing *State v. Bare*, 309 N.C. 122, 305 S.E. 2d 513 (1983). *See also State v. Maynard*, 65 N.C. App. 81, 82-84, 308 S.E. 2d 665, 666-68 (1983), *disc. rev. denied*, 310 N.C. 628, 315 S.E. 2d 694 (1984) (statute and commentary indicate that N.C.G.S. § 15A-1052(c) applies only where a judicial order granting immunity has been issued; N.C.G.S. § 15A-1054(c) provides a different safeguard, *i.e.*, a requirement of written advance notice to defense counsel, where arrangement for truthful testimony is made in exercise of prosecutorial discretion pursuant to N.C.G.S. § 15A-1054).

Further, at the close of all the evidence, the trial court instructed the jury as follows:

> [T]here is evidence which tends to show that [the three witnesses] were testifying under a grant of immunity. If you find that [they] testified in whole or in part for this reason, you should examine their respective testimony with great care and caution in deciding whether . . . to believe [it]. If, after doing so, you believe [it] in whole or in part, you should treat what you believe the same as any other believable evidence.

The jury thus was clearly instructed to consider the witnesses' testimony in light of their possible bias. In light of this instruction and of the fact that the witnesses' accomplice roles were abundantly clear from the evidence, we do not believe there is a reasonable possibility that the absence of a cautionary instruction prior to the witnesses' testimony influenced the verdict. Thus, while we detect no error, defendant has failed to carry his burden of showing prejudice from any possible error that may have occurred. N.C.G.S. § 15A-1443 (1983). This assignment of error is overruled.

The result is:

No. 84CRS16258—count 8—reversed;

Count 9—remanded for resentencing;

Counts 1, 2, 3, 4, 5, 6, 7 and 10—no error.